JACQUETT V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-434-CR

DAMION DONELL JACQUETT APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

A
ppellant Damion Donell Jacquett was charged with the offense of resisting arrest.  A jury found him guilty and assessed punishment at 365 days’ confinement with a recommendation of community supervision.  The jury also assessed a fine of $2,500.  The trial court suspended the jail confinement and placed Jacquett on community supervision for a period of twenty-four months. In two issues, Jacquett appeals the trial court’s judgment.  We affirm.

II. Background Facts

In this case, the issue of Jacquett’s use of force against the police was hotly disputed at trial, with the witnesses dividing into two groups: 1) Jacquett and his family, and 2) the police officers.  Jacquett asserts that the evidence was both legally and factually insufficient to support his conviction.  In the alternative, he argues that if the jury finds that the evidence was legally and factually sufficient to support his conviction, we hold that the evidence was sufficient to prove that he used the force for the purpose of protecting himself after the police used greater force than necessary in effectuating the arrest. 

A. The Police Officers’ Testimony

Officer Joshua Davis testified that when he responded to a trespass call, the resident, Jacquett, refused to open the door.  Officer Davis spoke to Jacquett’s mother, Mildred Davis, and to his sister, Dominque Potier, who were standing outside of the residence.  Officer Davis learned that they had come to Jacquett’s home to retrieve Dominique’s belongings, that Jacquett would not let them enter the residence to gather the belongings, and that Jacquett had hit his sister when she attempted to enter the residence.

A second officer, Officer Ray Jewett, arrived on the scene to assist Officer Davis.  When Jacquett eventually opened the door, Officer Jewett approached Jacquett, told him that he was under arrest, and instructed him to put his hands behind his back.  At that point, Jacquett struck Officer Jewett with his elbow.  Officer Jewett then grabbed Jacquet and attempted to place him on the floor to handcuff him.  The officer testified that Jacquett “[put up] a significant amount of resistance.”  Even after the officers managed to handcuff Jacquett, they stated that he continued to resist and yell obscenities. Officer Jewett testified that throughout the altercation, he used the minimum amount of force necessary to make the arrest.  The officers also testified that Jacquett never informed them that he had recently undergone back surgery. In fact, Officer Jewett testified that he was surprised to learn that Jacquett had recently had surgery because of the resistance and strength he displayed during the arrest.

B. The Family’s Testimony

Ms. Davis testified that when the police arrived at the scene, she observed one of the officers attempt to bend Jacquett over in order to place handcuffs on him.  She stated that she told the officer that Jacquett had just had back surgery and could not bend over.  However, she stated that despite her plea to the officers not to hurt Jacquett, one officer pepper-sprayed Jacquett while the other officer threw him down on the floor.  She testified that during Jacquett’s altercation with the police, he was fully cooperative and that he did not yell or cuss at the officers. 

Jacquett’s common law wife, Augusta Carranza Jacquett, also testified at trial.  She stated that she heard Ms. Davis tell both officers that Jacquett had just had back surgery, yet both officers grabbed him, told him to lie down, and appeared to choke him.  Carranza testified that she observed Jacquett use force against the officers, but stated that he only used the force in order to protect his back.

Lastly, Jacquett testified.  He stated that he believed that his actions were necessary to protect his back from injury.  Further, he testified that he was not informed that he was under arrest until after he had been forced to take action to protect himself.  

III. Sufficiency of the Evidence

In his first issue, Jacquett contends that the evidence is legally and factually insufficient to support his conviction. 

A. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
  Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App.2005).

In contrast, when reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim.App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient: (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. 
 Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.” 
 Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.  In performing a factual sufficiency review, we are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses.  
Id
. at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder's. 
Zuniga
, 144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence. 
 Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B. Legally and Factually Sufficient Evidence

A person is guilty of resisting arrest if that person intentionally prevents or obstructs one he knows is a peace officer from effecting an arrest of that person by using force against the peace officer.  
Tex. Penal Code Ann
. § 38.03(a) (Vernon 2003).  Jacquett argues that the jury disregarded uncontroverted medical testimony that established that he would have been unable to exert the degree of force required to resist arrest.  This testimony came from Ms. Davis, a registered nurse.  She testified that Jacquett was unable to bend, twist, or pull or push anything heavy as a result of his recent back surgery. 

Jacquett is correct in his assertion that this evidence was not controverted by other medical testimony.  However, to the extent that Ms. Davis’s testimony indicated that Jacquett could not have physically resisted arrest, it was controverted by the police officers’ eyewitness testimony in which they testified that they in fact observed Jacquett resist and use force against the officers.

Further, it is well established that a jury is entitled to believe all, some, or none of a witness’s testimony.
  Chambers v. State
, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  Expert witnesses, although capable of aiding the trier of fact in determining an issue, do not dictate the results of the jury’s determinations.  
Dashield v. State
, 110 S.W.3d 111, 115 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).  We note that even undisputed and uncontradicted evidence is subject to a credibility analysis by the jury, which may reasonably disbelieve and reject it. 
See e.g. id.
 (holding that factfinder may disbelieve uncontradicted expert testimony).  

Consequently, the jury in this case was free to believe or disbelieve any portion of Ms. Davis’s testimony.  
Sharp v. State
, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), 
cert. denied
, 488 U.S. 872 (1988).  Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury.  
Losada v. State
, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Evidence is not rendered factually insufficient simply because the jury resolved conflicting facts in the State’s favor.  
Cain
, 958 S.W.2d at 410.  

By its verdict, the jury determined that the police officers were believable, while Jacquett and his family were not.  This determination is well within the province of the jury.  
Fuentes
 
v. State
, 991 S.W.2d 267, 271 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999).  Therefore, after viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Jacquett committed the offense of resisting arrest.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  Furthermore, viewing all of the evidence in a neutral light, favoring neither party, we also conclude that the evidence taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  
See Zuniga
, 144 S.W.3d at 481.  After reviewing the entire record, we conclude that the evidence is legally and factually sufficient to support Jacquett’s conviction for resisting arrest.  

IV. Self-Defense

As a part of his first issue, Jacquett alternatively argues that if we hold that the elements of resisting arrest were sufficiently proven both legally and factually, we hold that the evidence was sufficient to prove that he used the force for the purpose of protecting himself after the police used greater force than necessary in effectuating the arrest. 

After a defendant has introduced some evidence of a defense, the State bears the burden of persuasion to disprove it.  
Zuliani v. State
, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); 
Saxton v. State
, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).  This burden does not require the State to introduce evidence disproving the defense; rather, it requires the State to prove its case beyond a reasonable doubt.  
Zuliani
, 97 S.W.3d at 594; 
Saxton
, 804 S.W.2d at 913. 

As part of our legal sufficiency review, we held that a rational trier of fact could have found beyond a reasonable doubt that Jacquett committed the offense of resisting arrest.  Therefore, the State carried its burden of disproving Jacquett’s defense.  Accordingly, we overrule Jacquett’s first issue.

V. Denial of Mistrial

In his second issue, Jacquett complains that the trial court improperly denied his motion for mistrial based on the following prosecutorial jury argument during the punishment phase of trial: 

[Prosecutor]: What’s he say? Well, in the statement that he gives to the police before he knows he’s got two charges to defend against, when he thinks it’s just what happened between him and his mom—

[Defense Attorney]: Your Honor, I’d object to that reference to two charges. That’s not in evidence.

[Prosecutor]: I’ll withdraw the statement.

[Defense Attorney]: Your Honor, I’m going to—I move to strike.

[The Court]: Okay. The jury is instructed to disregard the last statement by the prosecutor and not use it for any purpose in this trial whatsoever.

[Defense Attorney]: Move for a mistrial.

[The Court]: Denied.

When the trial court sustains an objection to jury argument and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial.
  Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  Only in extreme circumstances in which the prejudice caused by the improper argument is incurable, i.e., “so prejudicial that expenditure of further time and expense would be wasteful and futile,” will a mistrial be required. 
 Id
.; 
see also Simpson v. State
, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), 
cert. denied
, 542 U.S. 905 (2004).  Generally, an instruction to disregard impermissible argument cures any prejudicial effect.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied
, 523 U.S. 944 (2001). 

In determining whether the trial court abused its discretion in denying the mistrial, we consider (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct.  
Hawkins
, 135 S.W.3d at 77; 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), 
cert. denied
, 526 U.S. 1070 (1999).

Assuming, without deciding, that the complained-of remark was improper, we hold that the trial court did not abuse its discretion by denying a mistrial.  In this case, the challenged comment appears to be one that the jury could have reasonably deduced from the evidence.  In the guilt/innocence phase of the trial, the jury heard testimony from two police officers stating that they believed that Jacquett had assaulted his mother and sister.  A jury would not likely be shocked to have heard that Jacquett would be charged for those offenses; hence, any prejudicial effect of the challenged reference was minimal.  Additionally, the trial court attempted to cure any harm from the challenged remark by issuing an immediate instruction to disregard the statement.  Further, the statement comprised only one sentence in the State's closing argument.  

Finally, as to the certainty of the punishment, the record supports the punishment assessed by the jury, absent the misconduct.
(footnote: 2)  The State elicited testimony from multiple witnesses concerning the events that transpired on the day of the offense.  As stated above, two police officers testified that Jacquett physically resisted arrest after they repeatedly asked him to stop resisting and stop fighting.  Additionally, two different officers who responded to one of the original officer’s call for assistance, testified that they observed Jacquett thrashing about while Officers Davis and Jewett attempted to handcuff him. Moreover, all four officers testified that during the altercation, Jacquett never informed them that he had recently undergone back surgery.  Accordingly, we hold that the trial court's instruction to the jury to disregard the prosecutor's comment cured any resulting prejudicial effect and that the trial court did not abuse its discretion by denying Jacquett’s request for a mistrial.  
See Hawkins
, 135 S.W.3d at 77; 
Wesbrook, 
29 S.W.3d at 115.  We overrule Jacquett’s  second issue.

VI. Conclusion

Having overruled both of Jacquett’s issues, we affirm the trial court’s judgement.

BOB MCCOY

JUSTICE

PANEL B: HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: June 22, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 47.4
.

2:
Jacquett was convicted of resisting arrest, which is punishable by confinement in jail for a term not to exceed one year, a fine not to exceed $4,000, or both.  
See
 
Tex. Penal Code Ann
. §§ 12.21, 38.03 (Vernon 2003).  We note that the jury assessed Jacquett’s punishment at 365 days’ confinement but recommended that Jacquett receive community supervision.  Additionally, the jury assessed a fine of $2,500.